IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01703-WYD-MEH

JOHNNY EDWARDS,

    Plaintiff,

v.

LUCY HERNANDEZ, individual and official capacity,
JUDY BRIZENDINE, individual and official capacity,
LAURIE KNAPP, individual and official capacity, and
DOCTOR CALBING, individual and official capacity,

    Defendants.

---

**RECOMMENDATION TO GRANT DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

---

**Michael E. Hegarty, United States Magistrate Judge.**

Pending before the Court is Defendants' Motion for Summary Judgment [filed June 3, 2010; docket #41]. The matter is referred to this Court for recommendation. (Docket #42.) The motion is fully briefed and oral argument would not materially assist the Court in its adjudication. For the reasons stated below, the Court **RECOMMENDS** Defendants' Motion for Summary Judgment be **GRANTED**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

**BACKGROUND**

On July 17, 2009, Plaintiff commenced this action *pro se* pursuant to Section 1983 of 42 U.S.C. (Docket #3.) After initial review, the Court dismissed one of Plaintiff's claims in his Amended Complaint, allowing two to proceed. (*See* docket #14.) In sum, Plaintiff believes the Defendants violated his Eighth Amendment right to medical care when they denied his requests for the prison to purchase shoes that accommodate his bunions, as allegedly directed by prison medical staff. (*See* docket #12 at 4.) The Court construes Plaintiff's remaining claims, although couched as two claims, as four: 1) Defendant Hernandez violated Plaintiff's Eighth Amendment right to adequate medical care when she reviewed and denied Plaintiff's January 28, 2009 grievance; 2) Defendant Brizendine violated the same when she reviewed and denied a grievance, also in violation of Department of Corrections Administrative Regulation 850-05; 3) Defendant Knapp violated the same when she signed a grievance dated February 18, 2009, stating that medical would not provide shoes for any reason, despite an order for wider shoes issued by Dr. Sutton; and 4) Defendant Cabiling violated the same by not ordering the nursing staff to provide Plaintiff with proper footwear.[2] (*Id.* at 5-6.) Plaintiff requests a total of $1,200.00 in compensatory damages, $6.00 in nominal damages, and $12,000.00 in punitive damages. (Docket #3 at 9.) Plaintiff contends that each Defendant's conduct "was motivated by an evil intent, reckless callous indifference of [his] rights and for not following Doctor Sutton order [sic] for treatment." (*Id.*)

Defendants answered Plaintiff's Amended Complaint on December 15, 2009, then filed the present Motion for Summary Judgment on June 3, 2010. (Dockets ##27, 41.) Defendants assert that Plaintiff fails to allege facts that demonstrate Defendant Hernandez and Knapp's personal

---

[2]Defendants inform the Court that Dr. Cabiling's name is misspelled as "Calbing" in Plaintiff's Amended Complaint.

participation as required in a Section 1983 action. (Docket #41 at 5.) Defendants further contend that Plaintiff lacks sufficient evidence as a matter of law establishing a cognizable Eighth Amendment claim against Defendants Brizendine and Cabiling. (*Id*. at 6.) Defendants argue that even assuming Plaintiff's condition constituted an objectively serious medical need, Defendants Brizendine and Cabiling do not satisfy the subjective state of mind requisite for an Eighth Amendment violation. (*See id.* at 8-9.)

In Plaintiff's response, he recounts the facts alleged in his Amended Complaint.[3] Plaintiff contends that Dr. Sutton, at the Crowley Correctional Facility, wrote an order directing the facility to provide Plaintiff with wider footwear due to a diagnosis of a valgus deformity of Plaintiff's toes. (Docket #46 at 1; *see also* docket #41-2 at 7 (ambulatory health record).) Plaintiff believes that Administrative Regulation 850-05 dictates that "footwear prescribed for medical reasons must be authorized in writing and purchased by medical services." (Docket #46 at 1.) As Plaintiff is indigent, and claims he endures pain without proper footwear, Plaintiff contends that Defendants' instruction to Plaintiff to purchase his own medical footwear violates his right to medical care. (*Id*.) Plaintiff provided no evidentiary materials with his response.

Defendants replied in support of their motion, reiterating their argument that Plaintiff avers no facts establishing the personal participation of Defendants Hernandez and Knapp in the described Eighth Amendment violation. (Docket #48 at 2.) Defendants further state that the medical providers who evaluated Plaintiff from 2002 through January 23, 2010, determined that Plaintiff's bunions necessitated no more than for Plaintiff to purchase tennis shoes at the prison canteen. (*Id*.) Defendants argue that Dr. Sutton's recommendation for a wider shoe was countered by another

---

[3]Plaintiff filed an additional response on August 4, 2010. (Docket #49.) The additional response, in essence, restates Plaintiff's contentions presented in the first response and in his Amended Complaint.

3

doctor's exam of Plaintiff, who concluded Plaintiff did not meet the criteria for medical shoes. (*Id.* at 3.) Defendants contend that such difference of opinion between Plaintiff and a consulting doctor does not rise to the level of a constitutional violation. (*Id.*) Finally, Defendants again emphasize that no evidence indicates a sufficiently culpable state of mind on part of any Defendant regarding Plaintiff's medical condition. (*Id.* at 3-4.)

## **STATEMENT OF FACTS**

In their Motion for Summary Judgment, Defendants offer the following recitation of undisputed material facts:

Plaintiff, Johnny Edwards, is a former DOC inmate who, during all relevant events discussed in Plaintiff's Amended Complaint, was incarcerated in the Crowley County Correctional Facility ("CCCF"), a private prison operated by Corrections Corporation of America ("CCA") pursuant to a contract with the DOC. (Docket #12 at 4 (Am. Compl.).) Defendant Lucy Hernandez is employed by CCA as the Grievance Coordinator at CCCF. On February 13, 2009, she acknowledged receipt of Plaintiff's Step 1 grievance related to his request for a medical lay-in because his state issued boots were too narrow. (*Id.* at 2, 10.) Defendant Judy Brizendine is employed by CCA as a Health Services Administrator at CCCF. (*Id.* at 2, 5.) Defendant Laurie Knapp is employed by CCA as a Clinical Supervisor at CCCF. On February 17, 2009, she denied Plaintiff's Step 1 grievance related to his request for a medical lay-in because his state issued boots were too narrow. (*Id.* at 2, 10.) Defendant Doctor Louis Cabiling is employed by CCA as a Physician at CCCF. (*Id.* at 2, 3, 6.)

The first time Plaintiff experienced problems with bunions was in 2002, while he was incarcerated in the Bent County Correctional Facility. He was given a medical release from his prison job in the kitchen and reassigned a different job. There was no medical order for wider shoes. (Docket #41-1 at 8-9 (Pl.'s Dep. Tr.); docket #41-2 at 2 (Ambulatory Health Record ("AHR") dated

5/08/02).) Plaintiff was seen by the medical staff at the Arkansas Valley Correctional Facility on January 28, 2003, and again on October 12, 2004. On each occasion, medical providers concluded that Plaintiff simply needed to purchase tennis shoes from the canteen. A prescription for "medical shoes" was not provided. (Docket #41-2 at 3 (AHR 1/28/03), 4 (AHR 10/12/04); docket #41-1 at 10 (Pl.'s Dep. Tr.).)

Plaintiff was seen by Dr. Cabiling at CCCF on July 9, 2008. Dr. Cabiling's orders were for Plaintiff to purchase tennis shoes from the canteen, and the prison laundry was to issue Plaintiff the widest state shoes. (Docket #41-2 at 5 (AHR 7/9/08).) Plaintiff was seen by medical provider Stephen Mathews at CCCF on January 23, 2009. Mr. Matthews' observations were that Plaintiff was bearing full weight, his gait was stable, and Plaintiff had no apparent signs of pain, facial grimacing, or limping as a result of his bunions. Upon examination, Plaintiff had no bleeding, drainage or inflammation on his left foot. Mr. Mathews instructed Plaintiff to contact intake to try and receive a wider pair of boots or discuss other options with his case manager. (*Id*. at 6 (AHR 1/23/09).)

Plaintiff was examined by Dr. Jere Sutton at CCCF on February 14, 2009. Dr. Sutton observed that Mr. Edwards had a valgus deformity of the big toe on his left foot that caused valgus of the remaining toes. Mr. Edwards' little toe was placed in a varus position due to the stress of his boot, and the nail was cutting into the undersurface of Mr. Edwards' fourth toe. Dr. Sutton issued an order stating Mr. Edwards needed a half-size wider boot, and provided Mr. Edwards with a medical lay-in from his prison job. (Docket #41-2 at 7 (AHR 2/14/09).) Judy Brizendine offered to provide Plaintiff with a "medical permit", which would allow the Plaintiff the opportunity to purchase wider shoes through an independent vendor. However, Plaintiff had no monetary funds available to purchase wider shoes. (Docket #41-1 at 7, 13-14 (Pl.'s Dep. Tr.).)

5

On September 1, 2009, Plaintiff was examined by medical provider April Caldwell, at the Cheyenne Mountain Re-Entry Center. While Ms. Caldwell confirmed that Plaintiff had bunions, she determined that Plaintiff "does not meet criteria for medical shoes since he has no extensive deformity, no neuropathy, and no h/o ulcers." Plaintiff was instructed that he may purchase tennis shoes from the canteen, and could contact laundry about possibly trading his state issued boots for a wider, more comfortable boots. (Docket #41-2 at 8 (AHR 9/1/09).)

In his responses, Plaintiff did not indicate any dispute with this proffered statement of facts. (*See* dockets ##46, 49.)

## LEGAL STANDARDS

### I. Construction of *Pro Se* Pleadings

As Plaintiff proceeds *pro se*, the Court must construe his "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## II. Motion for Summary Judgment

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the Court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Maldonado v. City of Altus*, 433 F.3d 1294, 1302 (10th Cir. 2006). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

The non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. If the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing a genuine factual issue for trial. *Hysten v. Burlington N. and Santa Fe Ry. Co.*, 296 F.3d 1177, 1180 (10th Cir. 2002); Fed. R. Civ. P. 56(e). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), *except* the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324) (emphasis added). The Court must view the record and draw "all

favorable inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

### III. Section 1983 Affirmative Link Requirement

In a Section 1983 claim, Plaintiff must allege an affirmative link between the Defendants' conduct and any constitutional violation in his Complaint. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1156 (10th Cir. 2001) (citing *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991)). In order for a prison official to be liable for "deliberate indifference" under Section 1983, "the official must have been personally and directly responsible for the occurrence of the alleged Eighth Amendment violation." *Jenkins v. Denver County Jail*, No. 99-1335, 2000 WL 84893, at *2 (10th Cir. 2000) (unpublished). "Supervisors are only liable under § 1983 for their own culpable involvement" in the alleged violation, because government officials may not be held vicariously liable for the misconduct of their subordinates under Section 1983. *Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006).

### IV. Eighth Amendment Deliberate Indifference

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras,* 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)). Accordingly, prison officials must "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and ... tak[e] reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir. 1998) (citing *Farmer v. Brennan,* 511 U.S. 825, 832-33 (1994)). Prisoners state a claim of cruel and unusual punishment under the Eighth Amendment by alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," or that prison officials "have, with deliberate indifference," involuntarily exposed a prisoner

to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health." *Helling v. McKinney,* 509 U.S. 25, 35 (1993); *Estelle,* 429 U.S. at 105.

Plaintiff must meet both the objective and subjective components constituting the test for deliberate indifference. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id*. (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006)). The Tenth Circuit established "a medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Horton v. Ward*, 123 F. App'x 368, 371 (10th Cir. 2005) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 2005)).

The subjective component is met if the plaintiff demonstrates defendants "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293). The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura*, 461 F.3d at 1293 (quoting *Farmer*, 511 U.S. at 838). This component is equivalent to "criminal recklessness, which makes a person liable when she consciously disregards a substantial risk of harm." *Beauclair v. Graves*, 227 F. App'x 773, 776 (10th Cir. 2007) (quoting *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005)). "A prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of [the] condition." *Mata*, 427 F.3d at 755. However, "a delay in medical care 'only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm.'" *Mata*, 427 F.3d at 751 (citing *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)). Substantial harm includes "lifelong handicap, permanent loss, or

considerable pain." *Garett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

## DISCUSSION

### I. Defendants Hernandez and Knapp

In response to the question, "[d]id Lucy Hernandez do anything other than denying the grievance," Plaintiff stated in his deposition, "[n]o, not that I know of." (Docket #41-1 at 3; *see also* docket #12 at 5 (Am. Compl.).) Plaintiff further explained his understanding that Defendant Hernandez is "not medical . . . [but] just a grievance officer." (Docket #41-1 at 3.) Plaintiff agreed that he named Defendant Hernandez as a defendant because she denied the grievance, and not due to any other actions that she did take or could have taken. (*Id*. at 4.) As to Defendant Knapp, Plaintiff indicated that Defendant Knapp, like Defendant Hernandez, did nothing other than deny a grievance filed by Plaintiff. (*Id*. at 6; *see also* docket #12 at 6 (Am. Comp.).)

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citation omitted). "A denial of a grievance, by itself and without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Id*. (citations omitted). As Plaintiff himself admits, Defendants Hernandez and Knapp are named in this action only because they signed denials of two separate Step One grievances filed by Plaintiff. Therefore, the Court finds that Plaintiff's claims against Defendants Hernandez and Knapp fail as a matter of law, and Defendants' motion should be granted as to Defendants Hernandez and Knapp.

### II. Defendant Brizendine

In his Amended Complaint, Plaintiff avers that Defendant Brizendine "refused to follow Dr. Suttons [sic] order on 02/14/09 in which he sent her an order to provide me with wider foot wear." (Docket #12 at 5.) Plaintiff believes Defendant Brizendine violated Administrative Regulation 850-

05, which allegedly dictates that "footwear prescribed for medical reasons must be purchased by medical services." (*Id.*) Defendant Brizendine also denied Plaintiff's Step Two grievance. (Docket #41-1 at 5.) Plaintiff admits Defendant Brizendine authorized Plaintiff to order medical shoes through an Eastbay catalog shoe company. (*Id.* at 7.) However, Plaintiff represents he had no money to purchase the shoes. (*Id.*)

In the Plans/Orders section of the Ambulatory Health Record dated February 14, 2009, Dr. Sutton typed in "[n]eeds a 1/2 size wider boot." (Docket #41-2 at 7.) In that same section, there is a handwritten addition stating "to Judy." (*Id.*) A subsequent section indicates "[n]o standing or walking over 20 minutes until he receives a larger footwear." (*Id.*)

As previously described, to prove an Eighth Amendment violation regarding medical care, Plaintiff must establish 1) an objectively serious medical need and 2) a subjectively culpable state of mind on part of a defendant, in that the defendant knew of a substantial risk of harm yet did nothing to prevent or appease such risk. Defendants argue that "the evidence fails to establish that Plaintiff's bunions were a serious medical need that required medical shoes." (Docket #41 at 8.) Furthermore, Defendants assert that Plaintiff cannot prove that either Defendant Brizendine or Defendant Cabiling knew Plaintiff faced a substantial risk of harm and disregarded that risk. (*Id.*)

"A medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Horton*, 123 F. App'x at 371 (citation omitted). Here, the series of Ambulatory Medical Records addressing Plaintiff's podiatric health indicates to the Court that Plaintiff's condition indeed required some level of medical attention; thus, the Court concludes that, for purposes of this recommendation, Plaintiff meets the objective prong of the deliberate indifference test. The subjective prong gives the Court pause.

Defendants do not dispute Defendant Brizendine's awareness of Dr. Sutton's order that Plaintiff needed a half size wider boot, but allege that nothing in Dr. Sutton's order establishes "special shoes [as] a medical necessity" for Plaintiff. (*See* docket #41 at 10.) Defendants describe how Defendant Brizendine "allowed [Plaintiff] the opportunity to purchase wider shoes through an independent vendor" and offered to Plaintiff the same medical permit given to other inmates who were able to purchase wider shoes. (*Id*. (citing docket #41-1 at 13-14 (Pl.'s Dep. Tr.)).) Defendants argue that these interactions do not demonstrate the requisite subjective state of deliberate indifference. (*Id*.) The Court agrees.

Plaintiff must show Defendant Brizendine "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293). Plaintiff must establish Defendant Brizendine "deliberate[ly] refus[ed] to provide medical attention, as opposed to a particular course of treatment." *Fleming v. Uphoff*, No. 99-8035, 2000 WL 374295, at *2 (10th Cir. 2000) (unpublished) (quoting *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997)). Contrary to Plaintiff's conclusive assertions in his Amended Complaint and his responses to this motion for summary judgment, the Court believes Defendant Brizendine, within her discretion as a Health Services Administrator and according to the record, did not disregard any risk to Plaintiff, but treated the Plaintiff consistently with her treatment of other inmates who had been permitted to acquire accommodating shoes.

In order to survive a motion for summary judgment, Plaintiff must satisfy his burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. As Defendants properly supported their motion for summary judgment with Plaintiff's deposition transcript, Plaintiff's prison medical records, and stated prison policy regarding the purchase of medical items, Plaintiff may not rest on the allegations contained in the complaint, but must respond with specific

facts showing a genuine factual issue for trial. *Hysten*, 296 F.3d at 1180; Fed. R. Civ. P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), *except* the mere pleadings themselves." *Pietrowski*, 134 F.3d at 1008 (citation omitted).

The Court discerns that Plaintiff relies only on his pleadings. Plaintiff claims Defendant Brizendine violated Administrative Regulation 850-05, and such violation in turn implicates a violation of the Eighth Amendment. This regulation concerns "Offender Bedding and Clothing Issue and Dress Code."[4] Paragraph five of Section B within the regulation provides, "[c]lothing items and/or footwear prescribed for medical reasons must be authorized, in writing, and purchased by medical services or the AIC." In the Clinical Standards and Procedures regarding "Durable Medical Equipment" attached to Defendants' motion, the Colorado Department of Corrections establishes that it

> excludes coverage of orthopedic shoes, foot orthotics or other supportive devices of the feet, except under certain conditions. If the provider determines that the special shoes are medically necessary, the provider must consult with the facility HSA to determine the best type of footwear needed as well as the source for obtaining the shoes. If the need is for soft soled shoes, these can be purchased locally or from canteen. Custom made shoes are seldom needed.

(Docket #41-3 at 5.) The last paragraph in this section explains how "[e]xtra wide or extra large feet are not a medical condition and will not be issued special shoes unless the above criteria are met." (*Id.*)

In Plaintiff's deposition, he described how other inmates who complained of foot pain would receive a medical permit from "medical," instruction to purchase shoes from the Eastbay catalog, and when the ordered shoes arrived the prison would "have security check them," and the medical permit would authorize the inmate's possession of the ordered shoes. (Docket #41-1 at 13.)

---

[4]*Available at* http://www.doc.state.co.us/sites/default/files/ar/0850_05.pdf (last visited August 4, 2010).

Plaintiff then agreed that Defendant Brizendine gave him the Eastbay catalog and told Plaintiff that "if [he] could afford them, [he] could order any of the shoes that [he] wanted." (*Id*. at 14.) Plaintiff further agreed that the only difference between the other inmates who had complained of foot pain and himself was that "they somehow were able to afford the shoes" and Plaintiff was not. (*Id*.)

It appears to the Court that at best, Defendant Brizendine may have violated Administrative Regulation 850-05, but such violation does not implicate the Eighth Amendment. "A prison doctor's 'negligent diagnosis or treatment of a medical condition do[es] not constitute a medical wrong under the Eighth Amendment,' [citation omitted], as '[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner.'" *Duffield v. Jackson*, 545 F.3d 1234, 1238 (10th Cir. 2008) (quoting *Estelle*, 429 U.S. at 106). Defendant Brizendine acknowledged the instruction in Plaintiff's health record signed by Dr. Sutton and followed what appears to be, by Plaintiff's own words, the protocol for issuing special shoes to inmates who complain of foot pain. This conduct does not represent a deliberate refusal to provide medical treatment, nor a disregard for a substantial risk of harm to Plaintiff. Ultimately, Defendant Brizendine may have acted negligently in not facilitating the purchase of wider shoes for Plaintiff, but such negligence does not meet the standards requisite in an Eighth Amendment deliberate indifference claim. Plaintiff does not meet his burden of showing a genuine issue of material fact regarding this defendant. The Court finds that Plaintiff's claim against Defendant Brizendine fails as a matter of law, and Defendants' motion should be granted as to Defendant Brizendine.

## III. Defendant Cabiling

In his Amended Complaint, Plaintiff alleges Defendant Cabiling violated his Eighth Amendment right "by refussing [sic] to order the nursing staff at Crowley Correctional Facility to order me proper fitting footwear to releave [sic] the pressure on my feet caused by to [sic] narrow

shoes." (Docket #12 at 6.) Plaintiff represents that he talked with Defendant Cabiling more than one time at medical, and Defendant Cabiling told the Plaintiff that "medical doesn't buy shoes for any reason!" (*Id*.) The only evidence before the Court regarding Defendant Cabiling, other than the allegations in Plaintiff's pleadings, is an Ambulatory Health Record produced by Defendant Cabiling and Plaintiff's deposition testimony.

In his deposition, Plaintiff attested that he saw Dr. Sutton after being evaluated by Defendant Cabiling. (Docket #41-1 at 11.) Plaintiff confirmed that "there was no way for Dr. Cabiling to know that Dr. Sutton was going to find that [he] needed medical shoes months later because it hadn't happened yet." (*Id*. at 11-12.) The health record indicates it was completed by Defendant Cabiling per his assessment of Plaintiff conducted July 8, 2008. (Docket #41-2 at 5.) The health record completed by Dr. Sutton ordering a "1/2 size wider boot" is dated February 14, 2009. (*Id*. at 7.)

In the health record produced by Defendant Cabiling, the order instructed Plaintiff to purchase tennis shoes from the canteen and indicated that the laundry should issue the widest state shoes to Plaintiff. (Docket #41-2 at 5.) This order is consistent with the previous health records produced by other medical officers dated October 12, 2004 (*id*. at 4); January 28, 2003 (*id*. at 3); and May 8, 2002 (*id*. at 2); as well as the subsequent record dated January 23, 2009 (*id*. at 6), which also pre-dates the evaluation by Dr. Sutton.

The Tenth Circuit determined "a prison doctor remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment." *Callahan*, 471 F.3d at 1160 (quoting *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996)). *See also Worrell v. Bruce*, 296 F. App'x 665, 670 (10th Cir. 2008) (holding the same for decision of a prison nurse). Decisions such as a preferred course of treatment are based on medical judgment and are outside of the Eighth Amendment's scope. *Id*. (quoting *Estelle*, 429 U.S. at 107).

*See also Florence v. Rios*, No. 07-cv-00380-REB-KLM, 2008 WL 538677 at *7 (D. Colo. Feb. 25, 2008) ("no constitutional claim is stated where a prisoner challenges only matters of medical judgment . . ." (citing *Ledoux v. Davies*, 961 F.2d 1536 (10th Cir. 1992))). Plaintiff's claim against Defendant Cabiling appears to amount to no more than his perspective that Defendant Cabiling should have concluded the same diagnosis of Plaintiff's condition that Dr. Sutton described. Such disagreement is outside of the Eighth Amendment's scope.

Notably, the Supreme Court concluded "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 107. Such difference of opinion may amount to medical malpractice which, like the potential negligence of Defendant Brizendine, is not actionable under Section 1983. *Braxton v. Wyandotte County Sheriff's Dep't*, 206 F. App'x 791, 793 (10th Cir. 2006) (citing *Kikumura*, 461 F.3d at 1291).

The Court concludes Plaintiff does not meet his burden of showing a genuine issue of material fact regarding this defendant. The Court finds that Plaintiff's claim against Defendant Cabiling fails as a matter of law, and Defendants' motion should be granted as to Defendant Cabiling.

## CONCLUSION

Accordingly, for the reasons stated above and the entire record herein, the Court **RECOMMENDS** Defendants' Motion for Summary Judgment [filed June 3, 2010; docket #41] be **GRANTED** and Plaintiff's Amended Complaint be **DISMISSED WITH PREJUDICE**.[5]

---

[5]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings

16

It is hereby **ORDERED** that the Final Pretrial Conference set for September 16, 2010, at 9:30 a.m. is hereby **VACATED**, pending the District Court's decision on this recommendation.

Dated at Denver, Colorado, this 11th day of August, 2010.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).